UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL VIATICAL, INC., et al.,

       Plaintiffs,

v.

                                          Case No. 07-10484

UNITED FIDELITY CORPORATION, et al.,     Honorable Julian Abele Cook, Jr.

       Defendants.

### ORDER

In a complaint that was filed on January 31, 2007, the Plaintiffs, National Viatical, Inc., as the successor in interest to National Viatical Trust, Inc., and NVT Trust, seek to obtain damages from the Defendants[1] for their alleged (1) breach of contract and (2) negligent misrepresentation. It is the Plaintiffs' specific contention that the Defendants intentionally misinformed and induced them to purchase bonds and life insurance policies, to their economic detriment.

On April 21, 2008, the Plaintiffs filed a motion for summary judgment against two of the Defendants (David Goldenberg and Surety Marketing Source, L.L.C. ("SMS")), claiming that there are no genuine issues of a material fact to be determined by the Court. Neither of these Defendants

---

[1]The Defendants, who have been identified by the Plaintiffs, are (1) United Fidelity Corporation, (2) TCI Agency, Inc., (3) Surety Marketing Source, L.L.C. (as the successor in interest to UBS), (4) David Goldenberg, (5) Mark Wolok, (6) Sanford Lee Wolok, (7) Patricia Alex, (8) Lori Charlton, (9) John Roberts, (10) Arie Kotler, and (11) Richard Knoll. However, it should be noted that Mark Wolok filed for protection under Chapter 7 of the Bankruptcy Code on February 13, 2007. On May 3, 2007, the Court dismissed another Defendant, Sanford Lee Wolok, at the behest of the Plaintiffs. On July 30, 2007, Richard Knoll was dismissed by the Court as a Defendant in this action.

have filed a response to the Plaintiffs' motion as of this date. On July 23, 2008, the Plaintiffs also filed another motion in which they seek to substitute Lisa Portney-Goldenberg as a Defendant in place of her now-deceased husband, David Goldenberg.[2] In an order entered on September 5, 2008, the Court denied the motion, after determining that Portney-Goldenberg was not a proper party to be substituted in place of her deceased husband. At the same time, the Court held the April 21st dispositive motion in abeyance for a period of ninety days in order to allow the Plaintiffs to identify an appropriate substitute party for the deceased Goldenberg. However, the Court also warned them that if a timely substitution was not accomplished within the ninety day period, their claims against Goldenberg would be dismissed. On October 1, 2008, the Plaintiffs filed a third motion which was designed to reopen the discovery in this case for the purpose of obtaining certain presumptively relevant documents, submitting interrogatories, and deposing Portney-Goldenberg.

The Plaintiffs' motions to reopen discovery and for the entry of a summary judgment will now be addressed by the Court.

I.

National Viatical, Inc. ("NVI"), having been incorporated under the laws of Georgia, is the successor in interest to the National Viatical Trust, Inc. ("NVTI"), which had been organized under the laws of Florida. Prior to the commencement of its formal business relationship with NVI, NVTI had been engaged in the business of purchasing life insurance policies from policy holders at a discounted rate, commonly known as the "viatical settlement" business. During the course of its regular business activities, NVTI transferred the ownership of its acquired life insurance policies to NVT Trust. Under this arrangement, NVT Trust became the named "Principal" and "Direct

---

[2] Nearly nine months into this litigation, Goldenberg committed suicide on October 13, 2007.

2

Beneficiary" of the bonds that had been purchased by NVTI.

In their lawsuit, the Plaintiffs submit that Goldenberg, acting on behalf of his company, Unlimited Bond Services Agency, L.L.C. ("UBS"),[3] provided NVTI with a business proposition in April 2000 which included a "Due Diligence Package for United Fidelity Corporation" ("UFC"), a Cook Island surety company.[4] Acting upon this proposal, it purchased two life insurance policies from Goldenberg,[5] the terms of which provided that if the insured persons lived beyond their life expectancies,[6] NVTI would be entitled to receive the face value of the policies from UFC in the amounts of $500,000 for the Jacoff bond and $100,000 for the Christian bond, respectively.

The Plaintiffs submit that (1) Jacoff and Christian had outlived their life expectancies and (2) by virtue of this business agreement, they are entitled to the face value of the policies. It is their contention that, despite having filed claims with UFC, through Goldenberg, and SMS, "neither UFC nor any other defendant has paid" the face value of the policies in accordance with the contract.

II.

With regard to the Plaintiffs' request to reopen discovery, they submit that although

---

[3] SMS is the corporate successor in interest to UBS and was organized under the laws of Michigan.

[4] According to the Plaintiffs, this Due Diligence Package "contains references, balance sheets, financial statements, and additional information showing **its** experience and expertise in performing bonds." The Plaintiffs allege that the documents within the Due Diligence Package assert that UFC had always honored its claims. Furthermore, according to this Package, in order to "expedite the placement of bonds, UFC entered into a Managing General Agency Agreement with TCI Agency, Inc. ("TCI") . . . ."

[5] The first policy had been originally issued to Richard Jacoff and the second to David Christian.

[6] The life expectancies for Jacoff and Christian were three and five years, respectively.

Goldenberg committed suicide in October 2007, a suggestion of death had not been filed with the Court prior to the close of discovery on April 1, 2008. Thus, the Plaintiffs reason that there was no reasonable basis for them to have assumed that they would be unable to obtain pertinent information from Goldenberg. Moreover, they contend that "[t]hrough information and belief, [Goldenberg's widow] is the beneficiary of life insurance policies, the premiums of which were maintained through funds obtained by fraudulent means the subject of which is the crux of this action."

Portney-Goldenberg vehemently opposes this request, submitting that (1) the Plaintiffs, who were aware of her husband's demise as early as December 2007, failed or neglected to undertake any steps to seek information from her between the date of his death and the discovery deadline of April 1, 2008, (2) any statements by a court-appointed receiver in another civil action to which she is not a party are not binding upon her, and (3) the information that they seek to obtain is beyond the permissible scope of discovery under Fed. R. Civ. P. 26(b).[7]

Fed. R. Civ. P. 16(b)(4) provides that a scheduling order may be modified "only for good cause with the judge's consent." According to this rule of procedure, the moving party must show that "despite their diligence they could not meet the original deadline." *Leary v. Daeschner*, 349

---

[7]Fed. R. Civ. P. 26(b)(1) states, in part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

4

F.3d 888, 907 (6th Cir. 2003) (citing Fed. R. Civ. P. 16, 1983 Advisory Committee's Notes; *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

In this case, a period of six months has elapsed between the Court imposed discovery deadline of April 1, 2008 and the Plaintiffs' now-pending request to reopen discovery. After examining the official record in this cause, the Court believes that there are at least three reasons upon which to conclude that the Plaintiffs were aware of Goldenberg's death prior to the discovery deadline. First, Portney-Goldenberg has pointed to the Plaintiffs' Rule 26(f) Discovery Plan (filed on December 10, 2007), which stated that they "expect full cooperation from Mr. Goldenberg's *Estate* in connection with preservation and access to discoverable information." (emphasis added). Second, the attorney for Portney-Goldenberg has proffered an uncontested affidavit wherein he averred to his telephone conversation with the Plaintiffs' counsel on March 26, 2008 in which they discussed Goldenberg's death. The accuracy of these allegations have not been disputed by the Plaintiffs, as evidenced by their failure to file a reply to Portney-Goldenberg's response. Third, the Plaintiffs moved to add Portney-Goldenberg as a substitute party in place of her deceased husband on July 23, 2008, alleging that she was a beneficiary of his assets. Thus, it appears that the Plaintiffs were aware of Goldenberg's death when their motion for substitution was filed with the Court. As such, their failure to attempt to reopen discovery at this juncture in the litigation demonstrates a lack of diligence. Accordingly, the Plaintiffs' motion to reopen discovery must be denied.

### III.

Courts may only grant a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When faced with a motion for summary judgment, a court is encouraged to review all of the evidence before it and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006).

However, if a movant proclaims that there is no triable issue for a jury to resolve, the nonmovant must rebut this showing by "offering affirmative evidence from which a reasonable fact finder could find in his favor." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). Nevertheless, the trial court is obliged to view all of the competent evidence in a light that is most favorable to the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

Once the moving party has met its burden of showing that there is no genuine issue as to a material fact, the non-moving party cannot merely rest upon the allegations within its pleadings. *See* Fed. R. Civ. P. 56(e). Under these circumstances, the non-moving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). However, where - as in this case - the nonmovant has failed to file a response, the district court can evaluate the facts as presented by the moving party and need not search the record for genuine issues of a material fact. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

IV.

With respect to the pending motion for summary judgment against Goldenberg and SMS,

the Court initially notes that the Plaintiffs have failed to identify a proper substitution for the deceased Goldenberg within the ninety day time deadline, as prescribed by the order of September 5, 2008. Therefore, the Plaintiffs' claims against Goldenberg must be dismissed for their collective failure to comply with a Court directive.

Turning to the Plaintiffs' dispositive motion as it pertains to SMS, they contend that, even though each of the contractual contingencies (i.e., Jacoff was alive after the expiration of three years and Christian lived beyond the requisite five years) have been met, they have not been paid in accordance with the parties' written agreements. They maintain that the contractual language, which speaks to the Jacoff and Christian bonds, is clear and unambiguous. Significantly, SMS has not filed a response to this motion by the Plaintiffs.

The determination of whether a contract is ambiguous is a question of law which must be resolved by the trial court. *Marentette v. Local 174, United Auto. Workers of America*, 907 F.2d 603, 612 (6th Cir. 1990) (citing *Local 783, Allied Indus. Workers of America v. General Electric Corp.*, 471 F.2d 751, 757 (6th Cir. 1973), *cert. denied*, 414 U.S. 822 (1973)). A contract is considered to be ambiguous when its provisions can be "reasonably understood in different ways." *Michigan Twp. Participating Plan v. Pavolich*, 591 N.W.2d 325, 328 (Mich. Ct. App. 1998). Once the court has determined that a contract is unambiguous, its interpretation is also a matter of law, "and a party's interpretation is not permissible evidence." *Id.* (citing *Kassin v. Arc-Mation, Inc.*, 288 N.W.2d 413 (Mich. 1979)). However, if and when the language in a contract is clear, courts must give these terms their plain meaning. *Id.*

Here and following its review of the two bonds, it is the determination by the Court that the

contracts between the parties are not ambiguous. The language of the Christian bond[8] states that "[t]he Direct Beneficiary on behalf of the Indirect Beneficiary will be paid the face value-death benefit amount by the Surety, if the Viator is alive at the end of the fifth year, or (60) months from the Viatical Settlement Date, otherwise no payment is obligated hereunder."[9] The Plaintiffs have proffered evidence in the form of an affidavit by James Torchia, Chief Executive Officer of NVI, who avers that (1) NVTI bought the Jacoff and Christian bonds, (2) both men lived beyond their stated life expectancy, and (3) NVT Trust has not been paid the face value of either policy. Thus, the Plaintiffs correctly note that it is clear from the plain language of the contract that UBS, as SMS' predecessor in interest, has failed to perform as provided by the contract. Accordingly, the Court concludes that SMS is in violation of its contractual obligations. Accordingly, the Court finds that the Plaintiffs are entitled to a summary judgment against SMS for a breach of contract.

V.

As to their cause of action for negligent misrepresentation, the Plaintiffs proclaim that (1) Goldenberg, UBS, and TCI held out UFC to be a reliable issuer of bonds in their Due Diligence Package, and (2) they knew or should have known that NVTI would rely on this information to their detriment when deciding to purchase the policies.

In order to establish a claim of negligent misrepresentation under Michigan law, a plaintiff

---

[8] The Jacoff Bond contains nearly identical language as the Christian bond.

[9] The "Direct Beneficiary" is defined as the "authorized Trust Agent who is the owner of the policy[;]" in this case, NVT Trust. The "Indirect Beneficiary" is defined as the investor who provides funds for the Principal to purchase insurance policies (i.e., NVTI). The Surety company is designated as UFC, and the Viator in each of the contracts is "the natural person who has . . . an in-force life insurance policy . . . which is assigned, conveyed and/or transferred to the Beneficiary . . . [;]" namely, Jacoff and Christian.

must show that he "[1] justifiably relied to his detriment [2] on information provided without reasonable care [3] by one who owed the relying party a duty of care." *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. Ct. App. 1989) (citing *Raritan River Steel Co. v. Cherry, Bakaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988)). Moreover, an act of "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law . . . ." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 591 (Mich. 2004) (quoting *Clark v. Dalman*, 150 N.W.2d 755, 759-60 (Mich. 1967)).

The Court will assume, for purposes of this analysis, that SMS owes the Plaintiffs a duty of care that is based upon their contractual relationship. Working on this assumption, an examination of the record reveals that the Plaintiffs have failed to present any evidence which demonstrates that SMS, or its predecessor in interest, provided them with any information or material from the Due Diligence Package in the absence of reasonable care. Notwithstanding, the Plaintiffs contend that the evidence which ostensibly supports their proposition that they were not paid according to the terms of their bonds is sufficient proof that UFC does not have an "unblemished" record of paying its claims as promised in the Due Diligence Package. This position, in their respective opinions, is clear proof that SMA breached its duty of care.

The Court does not agree. This contention - standing alone - does not establish that the information within the Due Diligence Package is false or misleading. The evidence in the Due Diligence Package contains, among other things, letters from businesses which attested that they were fully satisfied in their business dealings with UFC. Thus, the Plaintiffs' failure to receive the monies, to which they are allegedly entitled, does not prove that the information regarding UFC's

9

past business relations or its financial statements are untrue. In summary, the Court determines that the Plaintiffs have not put forth a sufficiency of evidence for a trier of fact to find that when SMS' predecessor, UBS, provided the Plaintiffs with the Due Diligence Package it did so without reasonable care. Therefore, the Plaintiffs' motion for summary judgment on their negligent misrepresentation claim must be denied.

## VI.

Accordingly, for these reasons, the Court must, and does, (1) deny the Plaintiffs' motion to reopen discovery; (2) dismiss the Plaintiffs' claims against Goldenberg; and (3) grant in part, and deny in part, the Plaintiffs' motion for summary judgment against SMS.

IT IS SO ORDERED.

Dated: March 8, 2009                  s/Julian Abele Cook, Jr.
   Detroit, Michigan             JULIAN ABELE COOK, JR.
                                               United States District Court Judge

## Certificate of Service

I hereby certify that on March 8, 2009, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                                         s/ Kay Doaks
                                                                         Courtroom Deputy Clerk